

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-18-00387-CV

IN THE INTEREST OF E.X.H. AND S.M.H., CHILDREN

On Appeal from the 100th District Court
Carson County, Texas
Trial Court No. 11978, Honorable Stuart Messer, Presiding

February 22, 2019

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PARKER, JJ.

M.H. appeals from an order terminating her parental rights to her children, E.X.H. (E.) and S.M.H. (S.). The children were removed from M.H. after local authorities arrested her for money laundering and abandoning and endangering a child. The charges related to her apparent participation in a scheme to transport drugs or money to purchase drugs between Arizona and Kentucky. E. (born in 2013) and S. (born in 2016) were in the vehicle their mother drove across country as part of the scheme and at the time of the arrest. Though M.H. denied having specific knowledge of the details of the scheme, she knew it was "bad" and received $3,500 in cash as payment for her participation.

Furthermore, a sum of money exceeding $10,000 was found hidden within the vehicle she drove. The status of those criminal proceedings is unknown.

Upon trial of the termination suit, the court found four statutory grounds warranting termination of M.H.'s parental rights. It also found that termination was in the children's best interests. Through a single issue, M.H. contends that the evidence was legally and factually insufficient to support the best interest finding. We affirm.

*Legal and Factual Sufficiency to Support Best Interest*

M.H. specifically contends that the Department:

> took the children into custody over a pending criminal charge and kept [M.H.] from having a traditional parent-child relationship. The children appeared to be well taken care of by [M.H.]. Further, [M.H.] was residing in Arizona throughout the length of the case and tried to comply with the service plan to the best of her ability. She also maintained contact with the caseworker on a regular basis. [M.H.] attempted to complete several services while in Texas but was unsuccessful in doing so due to a lack of availability. In addition, [M.H.] also made attempts to contact the children but was also unsuccessful in accomplishing those interactions due to a lack of cooperation and planning. Further, it could be implied that there is no greater time of need of a mother by her children than at this young stage in life. In addition, [M.H.] did work through some of the services required by [the Department] in order for family reunification to occur, however it was difficult for her to comply completely due to her residence in another state.

Furthermore, she purportedly was trying to maintain a relationship with her children and the Department was hindering that relationship.

In reviewing whether the evidence is legally and factually sufficient to support termination, we apply the standards of review described in *In re K.M.L.*, 443 S.W.3d 101, 112-13 (Tex. 2014), and *In re K.V.*, No. 07-16-00188-CV, 2016 Tex. App. LEXIS 11091, at *6-8 (Tex. App—Amarillo Oct. 11, 2016, no pet.) (mem. op.). So too do we compare

the evidentiary record to the factors itemized in *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) when assessing whether termination favors the best interests of the children.

Again, the trial court found that the evidence established four statutory grounds warranting the termination. They involved 1) M.H. knowingly placing or allowing the children to remain in conditions or surroundings which endangered the physical or emotional well-being of the children, TEX. FAM. CODE ANN. § 161.001(b)(1)(D); 2) M.H. engaging in conduct or knowingly placing the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children, *id.* § 161.001(b)(1)(E); 3) M.H. failing to support the children within her ability, *id.* § 161.001(b)(1)(F); and 4) M.H. failing to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the children. *See id.* § 161.001(b)(1)(O). That each ground was supported by both legally and factually sufficient evidence is not something M.H. questions on appeal. And, in opting to forgo such an attack on those findings, M.H. tacitly conceded that sufficient evidence supported them. *See In re T.C.*, No. 07-18-00080-CV, 2018 Tex. App. LEXIS 6769, at *13 (Tex. App.—Amarillo Aug. 23, 2018, pet. denied) (mem. op.). More importantly, the evidence relevant to those grounds may be considered in assessing the best interests of the children. *See In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

So, our analysis begins with her tacit concession that the record evidence established she had endangered the children, failed to support them, and failed to comply with court orders conditioning the return of her children to her. To that we add evidence of both children being in the car and law enforcement testimony that drug couriers sometimes take children with them to use as decoys to minimize law enforcement

3

suspicions. Furthermore, the vehicle in question contained an inordinate amount of fast food wrappers suggesting that such was the quality of food being fed the children during the venture. Other evidence indicated that M.H. carried no change of clothing for the children or diaper bag despite the length of the venture and age of the children.

Once the children were removed, conditions were imposed upon M.H. to secure their return. One was that she seek counseling; she did not. Another was that she pay monthly child support; she did not. Another was that she maintain stable housing and employment; though M.H. purportedly complied, she never provided documentation verifying this. Another was that she complete a drug and alcohol assessment; the caseworker never received documentation showing that was done. Regarding other requirements, M.H. asserted that she was unable to perform them since she was living in Arizona. Yet, the caseworker testified that those services could be performed there at her expense but proof of their performance would be needed. No proof of their performance was forwarded to the caseworker.

Regarding M.H.'s living conditions, she apparently lived with her mother who was "validated" as engaging in physical abuse. Apparently, the children's father also physically abused M.H. and who was incarcerated at the time the children were removed from her. And despite being served with process regarding the termination proceeding, the children's father contacted no one involved in the case.

Since their removal, M.H. has had only one physical visitation with the children. Yet, she had communicated with them through "Skype" about seven times. The evidence also indicates that M.H. appeared for a portion of the termination trial but left before its completion. She had not been heard from since.

4

At time of trial, the children lived in two separate foster homes, though the homes were geographically near each other. They adjusted well to their environments, slept well, and maintained good appetites. Other evidence revealed that the eldest (E.) underwent speech therapy which he completed but will undergo continued monitoring. He also is enrolled in school and is said to learn very quickly.

A biological aunt residing in Arizona expressed her desire to adopt or care for the children. According to a CASA witness, this aunt is willing to "do whatever it takes . . . she wants those kids." At the time of the hearing, the aunt was gainfully employed as a "branch manager at an institution that takes care of disabled children" and was certified to take care of such children. A home study was done or will be done to determine if she qualifies to adopt the children.

From the foregoing, we conclude that the entirety of the record before us contains evidence both legally and factually sufficient to support the finding that termination of M.H.'s parental rights was in the best interests of the children.


Per Curiam